**Dissenting opinion issued March 18, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00798-CV

————————————

**ALLIANTGROUP, L.P., Appellant**

**V.**

**KARIM SOLANJI, ZEESHAN MAKHANI, SAQIB DHANANI, PARADIGM NATIONAL CONSULTANTS, L.P., PARADIGM SMD GROUP, L.L.C., AND PARADIGM PARTNERS, L.P., Appellees**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-62874**

---

## DISSENTING OPINION

Alliantgroup alleges that its clients were knowingly solicited by its former employees and their company—the appellees—in breach of a settlement agreement. Alliantgroup also contends that those actions constituted tortious

interference with its contractual relationships. The majority affirms a no-evidence summary judgment dismissing both claims, based entirely on the reasoning that Alliantgroup adduced no evidence to establish the existence of a "client" relationship with any entity solicited by the appellees at the time they were solicited.

Because I disagree with the majority's novel interpretation of Alliantgroup's agreements with its clients, which in turn has been used to reach the erroneous conclusion that Alliantgroup presented no evidence that any relevant client relationships existed, I respectfully dissent.

The majority holds—as a matter of law—that neither MGS nor Acutec qualified as a "client of Alliantgroup" for purposes of the settlement agreement because they were merely *former* clients. The panel majority thus limits the definition of the word "client" by reasoning that at the moment a professional concludes the main object of an engagement, if there is no other pending work, the client legally transforms into a *former* client. I do not agree this is the only meaning the word "client" can bear in the context of the settlement agreement, nor do I agree that the law requires the settlement agreement to be read in that way.

The majority relies on a contractual termination provision in the agreements between *Alliantgroup and its clients* to extrapolate an intention by *those* parties that *their* agreements, and therefore any client relationships between *them*, would

be definitively terminated immediately upon any payment of fees. I cannot join in that strained and implausible interpretation of the agreements between Alliantgroup and its clients, which preexisted the settlement agreement with Paradigm. Nor can I join the reasoning by which the majority attempts to bolster its interpretation by characterizing the Alliantgroup-Paradigm settlement agreement as an overbroad, unenforceable covenant not to compete. As the majority acknowledges, the appellees have never made this argument, either in the trial court or on appeal. And whatever public policy or legal obstacles may prevent Alliantgroup from *enforcing* a particular aspect of the settlement agreement with Paradigm—matters which were not argued in the trial court as grounds for summary judgment—I would not use those considerations as the majority does, sua sponte, to justify a conclusion that Alliantgroup presented no evidence of a client relationship with any entity solicited by Paradigm, and therefore no evidence of a breach of the Alliantgroup–Paradigm settlement agreement, which was the ground actually argued.

There is no dispute that MGS and Acutec have been clients of Alliantgroup. The response to the motion for summary judgment attached evidence which reflected that each of them was solicited on behalf of Paradigm. For example, Alliantgroup's summary-judgment evidence included email correspondence between Paradigm and the treasurer of Acutec. The Paradigm representative,

3

apparently following up on a phone conversation, wrote to the Acutec treasurer: "Thank you for your time and I am sorry that we cannot help with anything right now. I am also sorry that you had a bad experience before with a competitor." The Acutec treasurer responded by email: "The experience was not due to Alliantgroup."

In support of the particular allegation that MGS and Acutec were its current clients at the time of the challenged solicitations, Alliantgroup produced evidence of contracts under which it could still owe duties to both companies in the event of a future IRS audit. Without a more restrictive definition for the term "clients" within the settlement agreement, I conclude that Alliantgroup's evidence about its relationships with MGS and Acutec is "more than a scintilla of probative evidence to raise a genuine issue of material fact" as to whether they were "clients of Alliantgroup" for purposes of the settlement agreement. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing TEX. R. CIV. P. 166a(i)).

I turn now to address the other arguments that the appellees advanced in the trial court to support their motion for summary judgment. The motion broadly alleged a lack of evidence of a breach of the settlement agreement. But unlike the majority's analysis, the substance of the appellees' argument did not hinge on the definition of "client." Instead, as discussed below, it focused on the alleged lack of evidence of the appellees' actual knowledge of the current status of any

4

relationship between Alliantgroup and the appellees' solicitation prospects at the time they were contacted.

With respect to the contract claim, the motion alleged a lack of evidence that:

- "any of the Defendants contacted MGS";
- "any of the Defendants actually *knew* MGS and/or Acutec to be a client of Alliantgroup at the time that any of the Defendants initiated any such contact with either or both or those entities"; or
- "the Individual Defendants and Paradigm 'knowingly initiated' any such contact."

In fact, Alliantgroup produced some evidence on all of these points. The evidence showed that appellees Solanji, Makhani, and Dhanani are all former Alliantgroup employees who are now affiliated with appellee Paradigm. That is circumstantial evidence creating a fact issue as to whether knowledge held by one may have been shared with the others. The evidence showed that Makhani rendered services to Acutec while employed by Alliantgroup (in fact he drafted the Acutec tax-credit study), and that Solanji rendered services to MGS while employed by Alliantgroup (he was the project manager in charge of the MGS study).

Finally, there was some evidence adduced to show that Paradigm contacted both Acutec and MGS. The appellees objected in the trial court to the admissibility of such evidence with respect to any MGS contact, but even if we could not consider the evidence of the MGS contact, the evidence of the Acutec contact precludes a final summary judgment in the appellees' favor.

With respect to the tortious interference claim, in addition to alleging the absence of any "evidence to show any contractual relationship that is subject to interference" the motion alleged a lack of evidence:

- of "any act of willful and intentional interference with that relationship by any of the Defendants";
- that "it either sustained any actual damages or losses as a result of the purported tortious conduct by Defendants"
- "nor that any such interference was a proximate cause of any such damages."

But Alliantgroup produced evidence that it was disparaged in the course of Paradigm's solicitation of Acutec, with the Paradigm representative saying that "Alliantgroup basically did not know what they were doing" and that "a lot of companies that used them have been audited by the IRS." The settlement agreement stipulated that such communications, directed toward a client of Alliantgroup, would be harmful. That stipulation is some evidence that the communications were damaging to Alliantgroup. To the extent the appellees contend that the settlement agreement's liquidated damages provision is an unenforceable penalty, the argument that Alliantgroup may not have been damaged in *the amount* specified as liquidated contractual damages does not imply that Alliantgroup was not damaged at all.

In sum, I would reverse the summary judgment of the trial court and remand this case for further proceedings. "[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative

6

evidence to raise a genuine issue of material fact." *King Ranch*, 118 S.W.3d at 751. It very well may be that there are insurmountable factual and legal obstacles to any ultimate recovery on Alliantgroup's claims. But Paradigm has not yet carried its burden to justify what amounts to a "pretrial directed verdict" on the claims. *Id*. I would hold that the case should not have been dismissed for the reasons advanced in the motion filed in the trial court, or even for the new reasons relied upon by the majority to affirm.

Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Massengale, dissenting.